FILED
10/03/2022
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 1, 2022

## IN RE JOSHUA M. ET AL.

### Appeal from the Juvenile Court for Cocke County
No. TPR-06272    Brad Lewis Davidson, Judge

### No. E2021-01527-COA-R3-PT

Grandparents filed a petition in juvenile court seeking to terminate a mother's parental rights. When the mother failed to file an answer to the petition, the grandparents filed a motion for default judgment. After hearing arguments on the motion and receiving evidence on the termination petition, the court granted the motion for default judgment and entered an order terminating the mother's parental rights based on the grounds of (1) abandonment by failure to support, (2) persistence of conditions, and (3) failure to manifest an ability and willingness to assume custody and financial responsibility of the children. The court also determined termination of the mother's parental rights was in the children's best interest. We affirm the abandonment by failure to support ground but reverse the other two grounds. Concluding that the juvenile court failed to make sufficient findings of fact and conclusions of law regarding its best interest analysis, we vacate the court's decision that termination of the mother's parental rights was in the best interest of the children and remand for further findings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part, Reversed in Part, Vacated in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and KENNY W. ARMSTRONG, JJ., joined.

Lyndon Keith King, Jr., Sevierville, Tennessee, for the appellant, Cheryl M.

John Christian Stadler, III, Knoxville, Tennessee, for the appellees, Gregory F. and Shirley F.

# OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves the termination of Cheryl M.'s ("Mother") paternal rights to her children, Joshua M. and Hunter M., born in 2014 and 2018, respectively. On May 21, 2021, the children's grandparents, Shirley F. and Gregory F. (collectively, "Petitioners") filed a petition to terminate Mother's parental rights and for adoption. The petition does not cite to any of the grounds in Tenn. Code Ann. § 36-1-113(g), but it appears that Petitioners alleged three grounds for termination: (1) abandonment by failure to support, (2) persistence of conditions, and (3) failure to manifest a willingness and ability to assume custody and financial responsibility for the children.[1] Petitioners also alleged that the Cocke County juvenile court entered an order in October 2020 granting them physical and legal custody of the children and that the children have remained continuously in Petitioners' custody since that time.

On November 15, 2021, Petitioners filed three documents with the juvenile court. The first document was an affidavit of Petitioners' attorney stating that "[t]he original Summons was returned unserved, and an Alias summons was served upon [Mother] on or about July 16, 2021." The second document was a motion for default judgment asserting that default judgment was appropriate because Mother failed to file an answer to the termination petition. The third document, titled "Notice of Hearing," informed "all

---

[1] Paragraph eighteen of the termination petition states as follows:

Termination of [Mother's] parental rights is sought based upon as alternatives to one another, the following grounds which Petitioners are prepared to prove by clear and convincing evidence:

a. For abandonment by [Mother] as defined by Tennessee Code Annotated § 36-1-102(A) for a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent of the children who are the subject of the petition for termination of parental rights or adoption, that the parent has willfully failed to support or has willfully failed to make reasonable payments toward the support of the children.

b. The children have been removed from the home of [Mother] by order of the Cocke County Juvenile Court for a period of six (6) months and the conditions that led to the removal or other conditions that in all reasonable probability would cause the children to be subjected to further abuse or neglect and that, therefore, prevent the children's safe return to the care of the parent mother, still persist; there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to the parent in the near future; and the continuation of the parent and child relationship greatly diminishes the children's chances of early integration into a safe, stable and permanent home.

c. That [Mother] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in [Mother's] legal and physical custody would pose a substantial risk of harm to the physical and psychological welfare of the children at issue.

interested parties" that the motion for default judgment would be heard on November 30, 2021.

When the juvenile court heard the motion for default judgment on November 30, Mother failed to attend. Attorney Lyndon King appeared, however, and informed the court that "[a]pparently there was an appointment order" appointing him to represent Mother in the termination proceedings, but he did not receive the appointment order[2] or the case file until the day of the hearing on the motion for default judgment. Mr. King requested that the court reset the hearing so he could contact Mother because he did not know whether she was aware of his appointment or of the hearing. Initially, the court appeared inclined to grant his request, but it decided to proceed with the hearing after making inquiries of the court clerks about the appointment order. In particular, the clerks indicated that the judge had signed the appointment order, but the clerks took no further action with the order because Mother failed to complete an affidavit of indigency despite one of the clerks telling Mother she needed to do so when she called and requested a court-appointed attorney.

After hearing arguments on the motion for default judgment and receiving proof on the termination petition, the juvenile court entered an order granting a default judgment to Petitioners based on its finding that Mother failed to file an answer to the termination petition and that "[i]t ha[d] been more than thirty (30) days since [Mother] was served with process." The court then entered a separate, two-and-a-half-page order terminating Mother's parental rights. The termination order included only thirteen findings of fact and conclusions of law, which were as follows:

1.  This court has jurisdiction pursuant to Tenn. Code Ann. § 16-11-110, § 36-1-113(a), § 36-6-210 et seq., and § 37-1-104(c).
2.  That [Mother] has abandoned the minor children in the four months proceeding [sic] the filing of the Petition for Termination as defined by Tenn. Code Ann. § 36-1-102(A) in that she failed to provide any support for the minor children in the four (4) consecutive months preceding the filing of the Petition.
3.  The children have been removed from the home of [Mother] by order of the Cocke County Juvenile Court for a period of six (6) months and the conditions that led to the removal or other conditions that in all reasonable probability would cause the children to be subjected to further abuse or neglect and that, therefore, prevent the children's safe return to the care of the parent mother, still persist; there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to the parent in the near future; and the continuation of the parent and child relationship greatly

---

[2] The record on appeal does not include the appointment order, and neither the record nor Mother's brief provides any information regarding how Mr. King learned of the order's existence.

diminishes the children's chances of early integration into a safe, stable and permanent home.

4.   That the No Contact order from October 2020 remains in full effect.

5.   That [Mother] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the children, and placing the children in [Mother's] legal and physical custody would pose a substantial risk of harm to the physical and psychological welfare of the children at issue.

6.   That the Petitioners are fit and proper persons to have full legal custodianship of the minor children at issue, who have the financial ability to provide for the children, and who are ready and willing to provide for the physical and mental well being of the minor children.

7.   That it is the intent of the Petitioners to adopt the minor children.

8.   That the Petitioners are related to the minor children as defined in Tenn. Code Ann. § 36-1-102(45).

9.   That due to the relationship between the Petitioners and the children, the six-month waiting period, order of reference, preliminary home study, home study, order of guardianship or custody, supervision and preliminary and final court reports be waived pursuant to Tenn. Code Ann. § 36-1-119(a) and (b).

10.  That it is in the best interests of the minor children for [Mother's] parental rights to be terminated.

11.  That the biological and legal father of the minor children is deceased, and therefore his parental rights have been naturally terminated.

12.  That there are no other persons known to Petitioners who are entitled to notice under Tenn. Code Ann. § 36-1-117.

13.  As required by Tenn. Code Ann. § 36-1-113(d)(3)(A)(i), the putative father registry was contacted and there is no other claim of legal rights to the minor children.

Mother timely appealed and presents the following issues for our review:  (1) whether Mother was denied the right to counsel, (2) whether the juvenile court erred in granting default judgment without proper service of process, and (3) whether the juvenile court erred in finding that termination of Mother's parental rights was in the children's best interest.

STANDARD OF REVIEW

Under both the federal and state constitutions, a parent has a fundamental right to the care, custody, and control of his or her own child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 249-50 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996)

(citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Although this right is fundamental, it is not absolute and may be terminated in certain situations. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has identified "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

Tennessee Code Annotated section 36-1-113 provides the grounds and procedures for terminating parental rights. First, a petitioner seeking to terminate parental rights must prove that at least one ground for termination exists. Tenn. Code Ann. § 36-1-113(c)(1); *In re Angela E.*, 303 S.W.3d at 251. Second, a petitioner must prove that terminating parental rights is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

The termination of a parent's rights is one of the most serious decisions courts make because "[t]erminating parental rights has the legal effect of reducing the parent to the role of a complete stranger," *In re W.B., IV*, 2005 WL 1021618, at *6, "and of 'severing forever all legal rights and obligations of the parent or guardian.'" *Id.* (quoting Tenn. Code Ann. § 36-1-113(l)(1)). Consequently, a parent has a constitutional right to fundamentally fair procedures during termination proceedings. *In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *2 (Tenn. Ct. App. Jan. 24, 2018); *see also In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016).

Tennessee law ensures fundamental fairness in termination proceedings by requiring a heightened standard of proof—clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1); *In re Carrington H.*, 483 S.W.3d at 522. Before a parent's rights may be terminated, a petitioner must prove both the grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. "Clear and convincing evidence 'establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Serenity B.*, No. M2013-02685-COA-R3-PT, 2014 WL 2168553, at *2 (Tenn. Ct. App. May 21, 2014) (quoting *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

We review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *In re Serenity B.*, 2014 WL 2168553, at *2. In light of the heightened standard of proof, we must then make our own determination "as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)).

ANALYSIS

I. Assistance of counsel

Mother first argues that the juvenile court violated her due process right to a fundamentally fair proceeding because the court denied her the right to appointed counsel. According to Mother, the juvenile court denied her the right to appointed counsel because "[t]he order signed by the court appointing counsel to Mother was never forwarded to the appointed counsel, and appointed counsel for Mother was not aware of the [hearing on the motion for default judgment] until the moments before the hearing began." The Due Process Clause of the United States Constitution does not "require[] the appointment of counsel in every parental termination proceeding." *Lassiter v. Dep't of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 31 (1981). However, "Tennessee statutorily provides the right to appointed counsel for *indigent* parents in every parental termination proceeding." *In re Carrington H.*, 483 S.W.3d at 527 (emphasis added); *see also* Tenn. Code Ann. § 37-1-126(a)(2)(B)(ii)-(3) (providing that an indigent parent is entitled to court-appointed counsel "at all stages of any proceeding under this part in proceedings involving . . . [t]ermination of parental rights pursuant to § 36-1-113"). In other words, a parent in a termination proceeding is entitled to appointed counsel only if he or she is deemed "indigent."

To be deemed "indigent," a parent must follow the procedure set forth in Tennessee Supreme Court Rule 13. Tennessee Supreme Court Rule 13(e)(1) states that, whenever a parent in a parental termination proceeding "requests the appointment of counsel, [the parent] shall be required to complete and submit to the court an Affidavit of Indigency Form provided by the Administrative Office of the Courts." Once the affidavit of indigency is submitted, "the court shall make a finding as to the indigency of the [parent] pursuant to the provisions of Tennessee Code Annotated section 40-14-202" and "shall enter an order appointing counsel unless the indigent [parent] rejects the offer of appointment of counsel with an understanding of the legal consequences of the rejection." TENN. SUP. CT. R. 13(e)(2)-(3).

During the hearing on the motion for default judgment, two members of the court's staff informed the court that the case file included a signed order appointing counsel to represent Mother in the termination proceedings. However, the two staff members expressed confusion about why the file included a signed order of appointment because Mother failed to complete the requisite affidavit of indigency:

[STAFF MEMBER ONE]: How did she get appointed an attorney?
[STAFF MEMBER TWO]: Okay. Here is what happened. [Mother] had went to [Derreck] Whitson's [an attorney] office to speak with him. And he instructed her to come over and get a court-appointed attorney. She was in the office with him when he was talking to me. I told her to come straight

over, that I would have everything done up that I could, and we would let her go ahead and fill it out [the affidavit of indigency]. And I haven't heard from her since.

[STAFF MEMBER ONE]: So how did it get in front of the Judge for signature?

THE COURT: I got it signed to assign an attorney.

. . . .

[STAFF MEMBER ONE]: So I don't know. I mean, it's - - she didn't - - she's signed nothing.

[STAFF MEMBER TWO]: And filled out nothing.

[STAFF MEMBER ONE]: And filled out nothing.

THE COURT: You haven't talked to her in forever?

MR. KING [Mother's appointed attorney]: No. I think the last contact was right as soon as this was filed [the termination petition] - - probably before she went and consulted with Mr. Whitson - - because I essentially warned her, hey, I haven't been appointed, our case was closed out on the underlying dependency and neglect, if you want an attorney, call the clerks, is what I told her.

[STAFF MEMBER TWO]: Right. And the - -

MR. KING: And I'm guessing she went to [Mr. Whitson] and then decided to call the clerks.

[STAFF MEMBER TWO]: And he called me and - - yes. And she was right there. So I told him, I said, have her come straight over. I held the file on my desk for weeks. And that may have been how Your Honor wound up with it.

From this discussion, it appears that the judge signed an order of appointment and that he did not sign it in accordance with Tennessee Supreme Court Rule 13. Additionally, nothing in the record shows that the order was ever entered by the court, which would explain why it was never sent to Mother or Mr. King. Although we have serious doubts about the order's validity, neither party challenged its validity in the juvenile court and they do not challenge it on appeal. We, therefore, will not opine on the validity of the order of appointment, but we believe that the order and the discussion above evince the juvenile court's willingness to provide Mother with counsel rather than to deny her that right. And Mr. King did, in fact, appear at the November 30 hearing and represented Mother.

If anything, it appears that Mother waived her right to an attorney. We have previously held that an indigent parent's right to appointed counsel in parental termination proceedings is not absolute. *State v. A.W.S.*, No. E2002-02227-COA-R3-JV, 2004 WL 73271, at *3 (Tenn. Ct. App. Jan. 16, 2004) (citing *State Dep't of Children's Servs. v. Agbigor, Sr.*, No. M2000-03214-COA-R3-JV, 2002 WL 31528509, at *5 (Tenn. Ct. App. Nov. 15, 2002). For instance, a parent may effectively waive the right to appointed counsel if the parent fails to communicate with his or her attorney or fails to avail himself or herself

of opportunities offered by the trial court. *In re Elijah B.*, No. E2010-00387-COA-R3-PT, 2010 WL 5549229, at *6 (Tenn. Ct. App. Dec. 29, 2010); *In re K.D.D.*, No. M2000-01554-COA-R3-JV, 2001 WL 219669, at *1, *3-4 (Tenn. Ct. App. Mar. 7, 2001); *see also A.W.S.*, 2004 WL 73271, at *3. Here, Mother failed to avail herself of opportunities offered by the juvenile court because she did not complete the affidavit of indigency despite two attorneys and a court clerk's office employee informing her that she needed to do so. Furthermore, the record shows that Mother was familiar with the procedure for requesting appointment of counsel because she requested and was appointed counsel in the underlying dependency and neglect proceedings.

Based on these facts, we conclude that the juvenile court did not violate Mother's right to appointed counsel.

II. Default judgment

Mother next asserts that the order granting default judgment to Petitioners was void because the juvenile court lacked personal jurisdiction over her due to improper service of process. If a termination petition is filed in a juvenile court, the Tennessee Rules of Civil Procedure govern how service of process is accomplished. Tenn. Code Ann. § 36-1-117(m)(2); TENN. R. JUV. P. 101(c)(3)(A). When a party has been served process and fails to answer the termination petition, Tenn. Code Ann. § 36-1-117(n) allows the juvenile court to enter a default judgment "against any party to the . . . termination proceeding upon a finding that service of process has been validly made against that party in accordance with the Tennessee Rules of Civil or Juvenile Procedure . . . ."

What constitutes valid service of process under the Tennessee Rules of Civil Procedure? The answer to this question appears in Rule 4. Pursuant to Tenn. R. Civ. P. 4.01(1), "[u]pon the filing of the complaint, the clerk of the court shall promptly issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve process." "[A]ny person who is not a party and is not less than 18 years of age" is authorized to serve process. TENN. R. CIV. P. 4.01(2). As Mother points out, Rule 4.04 allows for service of process by mail and states that

> [s]ervice by mail shall not be the basis for the entry of a judgment by default unless the record contains either: (a) a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or statute; or (b) a return receipt stating that the addressee or the addressee's agent refused to accept delivery, which is deemed to be personal acceptance by the defendant pursuant to Rule 4.04(11).

TENN. R. CIV. P. 4.04(10). Mother contends that she was not properly served process because "the record does not reflect there was personal acceptance by Mother, or a

designee, of service of process by certified mail." We agree that no such evidence appears in the record, but Mother's argument neglects the fact that Rule 4.04 allows for service of process by several methods other than by mail. As relevant here, Rule 4.04 allows for service of process "[u]pon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual *personally*." TENN. R. CIV. P. 4.04(1) (emphasis added). The record contains evidence showing that Mother was personally served process. A signed return on an alias summons states that the Cocke County Sheriff's Department served the alias summons and the termination petition to Mother personally at her home in Cosby, Tennessee on July 16, 2021. Thus, contrary to Mother's assertion, she was served process in accordance with the Tennessee Rules of Civil Procedure.

The certified mailing Mother references in her appellate brief involved the motion for default judgment. The mailing included the motion, the affidavit of Petitioners' attorney, and the notice that the motion would be heard on November 30, 2021. These documents fall under the purview of Rule 5 of the Tennessee Rules of Civil Procedure which governs serving various documents, pleadings, and filings—those other than the complaint and summons—once a party has been served with process. Rule 5.01 requires that all parties be served with, among other things, "every written motion other than one which may be heard ex parte" and "every written notice." Service of these other pleadings is accomplished as follows:

> Whenever under these rules service is required or permitted to be made upon a party represented by an attorney, the service shall be made on the attorney unless service on the party is ordered by the court. Service on the attorney or on a party shall be made by delivering a copy of the document to be served, or by mailing it to such person's last known address, or if no address is known by leaving the copy with the clerk of the court.

TENN. R. CIV. P. 5.02(1). Therefore, Rule 5.02 allows for service of a motion or written notice of a motion hearing by mail.

Although not clearly articulated, we discern that Mother's argument is that service was invalid because evidence in the record showed she was not the one who received the motion or the written notice of the hearing. First, we note that, if a party elects to serve a pleading or other paper by mail, service "is complete upon mailing." TENN. R. CIV. P. 5.02. Second, we note that both the motion and the notice of hearing included a certificate of service stating that Mother was served "By Certified Mail, Return Receipt Requested" on November 12, 2021. When a pleading or other paper is served under Rules 5.01 and 5.02 and the document includes a certificate of service, we have held that the certificate of service "is prima facie evidence that the document was served in the manner described in the certificate and raises a rebuttable presumption that it was received by the person to

whom it was sent."[3]  *Orr v. Orr*, No. 01-A-01-9012-CH-00464, 1991 WL 226916, at *4 (Tenn. Ct. App. Nov. 6, 1991); *see also* TENN. R. CIV. P. 5.03 (requiring "proof of the time and manner" of service of documents served under Rules 5.01 and 5.02 and providing that such proof may be made "by certificate of a member of the Bar of the Court").

Mother attempts to rebut the presumption that she received the documents by pointing out that the return receipt offered by Petitioners during the hearing on the motion for default judgment was not signed by her, but rather, by "M. Williams."  However, the court asked Petitioners' attorney who "M. Williams" was, and Petitioners' attorney stated it was "the mailman that placed the letter in [Mother's] hands."  A court clerk then informed the judge that, due to COVID-19, it was, at that time, the United States Postal Service's policy for the postal service worker to sign the return receipt rather than the recipient.[4]  Moreover, Mother's attorney made no objection to the return receipt.

Based on the foregoing, we conclude that Mother failed to rebut the presumption that she received both the motion for default judgment and the written notice of the hearing on the motion.  Therefore, Mother's argument that the juvenile court lacked personal jurisdiction to adjudicate the motion for default judgment is without merit.

## III.  Termination order

Finally, Mother contends that the juvenile court's order terminating her parental rights should be vacated because the findings of fact and conclusions of law were not sufficient to make appellate review possible.  The termination statute requires a trial court to "enter an order which makes specific findings of fact and conclusions of law."  Tenn. Code Ann. § 36-1-113(k).  "Factual findings both 'facilitate appellate review' and safeguard the important rights at stake in a termination proceeding."  *In re Kenneth D.*, No. M2021-00214-COA-R3-PT, 2022 WL 556739, at *5 (Tenn. Ct. App. Feb. 24, 2022)

---

[3] Rule 55.01 of the Tennessee Rules of Civil Procedure states that, "[e]xcept for cases where service was properly made by publication, all parties against whom a default judgment is sought shall be served with a written notice of the application at least five days before the hearing on the application, regardless of whether the party has made an appearance in the action."  The certificate of service states that the motion for default judgment was served to Mother on November 12, 2021—more than five days before the November 30, 2021 hearing.

[4] The following media statement from United States Postal Service corroborates the clerk's statement:

> We have changed delivery procedures to eliminate the requirement that customers sign our Mobile Delivery Devices for delivery.  For increased safety, employees will politely ask the customer to step back a safe distance or close the screen door/door so that they may leave the item in the mail receptacle or appropriate location by the customer door.

*Media Statement – COVID-19, The United States Postal Service, Apr. 2, 2020*, https://www.simplecertifiedmail.com/wp-content/uploads/USPS-Statement-on-COVID-19-Signatures-04-02-20.pdf (last visited Sept. 20, 2022).

(quoting *In re Angela E.*, 303 S.W.3d at 251). Except under certain circumstances, if a trial court fails to comply with this requirement, we must remand the case for preparation of the necessary findings of fact and conclusions of law. *State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759, at *6 (Tenn. Ct. App. Feb. 9, 2004); *see also In re Abbigail C.*, No. E2015-00964-COA-R3-PT, 2015 WL 6164956, at *14 (Tenn. Ct. App. Oct. 21, 2015) (declining to remand when we affirmed both the existence of other grounds for termination and the trial court's best interest determination). We will begin with the juvenile court's findings of fact regarding the grounds for termination of Mother's parental rights.

## A. Termination grounds

In its analysis of the grounds for terminating Mother's parental rights, the juvenile court failed to cite to any of the grounds enumerated in the termination statute, but it did articulate individualized findings of fact and conclusions of law. We have held that "[a] judgment in a termination case will not be set aside if it can be reasonably inferred from the opinion or order that the decision was based on the statutory requirements." *In re Jeremy D.*, No. 01-A-01-9510-JV00479, 1996 WL 257495, at *3 (Tenn. Ct. App. May 17, 1996). A review of the termination order shows that the juvenile court's findings are specific enough to reasonably infer that the court determined Petitioners proved by clear and convincing evidence the termination grounds set forth in Tenn. Code Ann. § 36-1-113(g)(1), (3), and (14).

### 1. Abandonment

The juvenile court first found that Petitioners proved by clear and convincing evidence that Mother "abandoned the children." It appears that the ground the court relied upon here was "[a]bandonment by the parent." Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102(1)(A) defines "abandonment" in multiple ways. At the time the petition was filed, "abandonment" included a parent's failure "to support or . . . to make reasonable payments toward the support of the child" for the four-month period immediately preceding the filing of the termination petition. Tenn. Code Ann. § 36-1-102(1)(A)(i). The juvenile court found that Mother "failed to provide any support for the minor children in the four (4) consecutive months preceding the filing of the Petition." The record contains clear and convincing evidence supporting this finding because Petitioners both testified that they received zero financial support from Mother for the children during the four months immediately preceding the filing of the termination petition. We, therefore, affirm the juvenile court's termination of Mother's parental rights pursuant to this termination ground.

2.  Persistence of conditions

The juvenile court next found that Mother's parental rights should be terminated because

> [t]he children have been removed from the home of [Mother] by order of the Cocke County Juvenile Court for a period of six (6) months and the conditions that led to the removal or other conditions that in all reasonable probability would cause the children to be subjected to further abuse or neglect and that, therefore, prevent the children's safe return to the care of the parent mother, still persist; there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to the parent in the near future; and the continuation of the parent and child relationship greatly diminishes the children's chances of early integration into a safe, stable and permanent home.

It appears that this finding is meant to support termination pursuant to Tenn. Code Ann. § 36-1-113(g)(3) because it is almost a verbatim recitation of the language in that statute. This ground is often referred to as "persistence of conditions" and "focuse[s] on the results of the parent's efforts at improvement rather than the mere fact that he or she had made them." *In re Audrey S.*, 182 S.W.3d at 874. Therefore, the question we must answer is "the likelihood that the child can be safely returned to the custody of the [parent], not whether the child can safely remain in foster care." *In re K.A.H.*, No. M1999-02079-COA-R3-CV, 2000 WL 1006959, at *5 (Tenn. Ct. App. July 21, 2000).

Persistence of conditions may be a basis for terminating a parent's parental rights if:

> The child has been removed from the home or the physical or legal custody of a parent . . . for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> > (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent . . . , or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent . . . ;
> >
> > (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and

- 12 -

>(iii) The continuation of the parent . . . and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3)(A). A petitioner seeking to terminate parental rights pursuant to this ground must prove each of the statutory elements by clear and convincing evidence. *In re Justin D.*, No. E2019-00589-COA-R3-PT, 2020 WL 4473032, at *9 (Tenn. Ct. App. Aug. 4, 2020) (citing *In re Michael B.*, No. M2019-01486-COA-R3-PT, 2020 WL 2988932, at *10 (Tenn. Ct. App. June 4, 2020)).

The juvenile court found that the children had "been removed from the home of [Mother] by order of the Cocke County Juvenile Court for a period of six (6) months" before the termination hearing began. However, the evidence in the record does not clearly and convincingly support this finding. Mr. F. testified that he and his wife obtained custody of the children "through an emergency order from [the juvenile court]" because Mother "was not taking care of the kids and that subsequently [Petitioners] found out that she was doing drugs and could never pass a drug screen." Neither Mr. F. nor Ms. F. testified about when the court entered the emergency order removing the children from Mother's custody, and the order was not introduced into evidence. We acknowledge that, in the termination petition, Petitioners alleged that this order was entered on October 22, 2020, but this case was decided on the basis of a default judgment. "A default judgment in a parental termination case . . . differs from a default judgment in other civil cases, wherein the typical civil defendant, 'by suffering a default judgment to be entered against him, impliedly confesses all of the material allegations of fact contained in [the] complaint, except the amount of the plaintiff's unliquidated damages.'" *In re Connor B.*, 603 S.W.3d 773, 783 (Tenn. Ct. App. 2020) (quoting *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984)). "[A] default judgment in a parental termination case requires the presentation of proof concerning grounds for termination of parental rights and best interest." *Id.*; *see also* Tenn. Code Ann. § 36-1-117(n) (stating that, before a court may enter a default judgment against a parent who was properly served process in a termination proceeding, "proof must be presented as to legal grounds and best interest pursuant to § 36-1-113"). Although the record indicates that the children were removed from Mother's custody by a court order, we cannot, without evidence indicating when that order was entered, conclude that Petitioners proved by clear and convincing evidence that the children had been removed from Mother's custody by a court order "for a period of six (6) months." *See Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992) ("Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence."). We, therefore, must reverse the juvenile court's decision regarding this termination ground.

3. Failure to manifest an ability and willingness to personally assume custody

The juvenile court next concluded that Mother "failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the children" and that "placing the children in [Mother's] legal and physical custody would pose a substantial risk of harm to the[ir] physical and psychological welfare." It appears that the court was referring to the ground found at Tenn. Code Ann. § 36-1-113(g)(14). This ground requires a petitioner to prove two elements by clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c)(1), (g)(14). First, a party must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). Second, a petitioner must prove that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14).

To establish the first prong, the party seeking to terminate parental rights need only prove that a parent failed to manifest either an ability or a willingness to assume custody. *In re Neveah M.*, 614 S.W.3d 659, 677 (Tenn. 2020) (citing *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *13-14 (Tenn. Ct. App. June 20, 2018)). "Ability focuses on the parent's lifestyle and circumstances[,]" and willingness focuses on the parent's attempts "to overcome the obstacles that prevent [him or her] from assuming custody or financial responsibility for the child." *In re Serenity W.*, No. E2018-00460-COA-R3-PT, 2019 WL 511387, at *6 (Tenn. Ct. App. Feb. 8, 2019). Thus, a parent's mere desire to reunite with his or her child is insufficient to demonstrate an ability or a willingness. *In re Nicholas C.*, No. E2019-00165-COA-R3-PT, 2019 WL 3074070, at *17 (Tenn. Ct. App. July 15, 2019). A petitioner must prove that the parent failed to demonstrate ability and/or willingness as of the date the termination petition was filed. *In re M.E.N.J.*, No. E2017-01074-COA-R3-PT, 2017 WL 6603658, at *7 (Tenn. Ct. App. Dec. 27, 2017).

Mr. F. testified that Mother received government benefits on behalf of the children, but she never gave those funds to Petitioners despite the court ordering her to do so. Furthermore, Petitioners both testified that Mother provided no financial support for the children during the custodial episode. Mr. F. testified that Mother did nothing "to try to regain custody or even visitation of the children" after the court granted custody of the children to Petitioners. Based on this evidence, we conclude that Petitioners proved by clear and convincing evidence that Mother failed to manifest either an ability or a willingness to assume custody or financial responsibility of the children.

As for the second prong, a thorough examination of the record shows that Petitioners offered very little evidence to support the juvenile court's cursory finding that placing the children in Mother's custody "would pose a substantial risk of harm to the[ir] physical and

psychological welfare." Mr. F. stated that, after the court issued the emergency custody order, Petitioners "found out that [Mother] was doing drugs and could never pass a drug screen." We agree that, if Mother was still doing drugs, this would certainly pose a substantial risk of harm to the children. But Petitioners provided no evidence establishing whether Mother was still using drugs at the time of the hearing. Indeed, the record contains little to no evidence concerning Mother's circumstances before or at the time of the hearing. From this limited evidence, we cannot conclude that Petitioners established this prong by clear and convincing evidence. We, therefore, reverse the juvenile court's determination that Petitioners established this termination ground by clear and convincing evidence.

### B. Best interest

Having determined that clear and convincing evidence of at least one statutory ground exists to terminate Mother's parental rights, we must next consider whether the trial court properly determined that termination of Mother's parental rights was in the best interest of the children. *See* Tenn. Code Ann. § 36-1-113(c)(2); *In re Audrey S.*, 182 S.W.3d at 860. After a court finds that clear and convincing evidence exists to support a ground for termination, the child's interests diverge from those of the parent and the court focuses on the child's best interests. *In re Audrey S.*, 182 S.W.3d at 877. A court must view the child's best interest from the perspective of the child, not that of the parent. *Id.* at 878. A finding that at least one ground for termination of parental rights exists does not necessarily require that a parent's rights be terminated. *Id.* at 877. Because some parental misconduct is redeemable, our termination of parental rights statutes recognize that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* The facts a court considers in its best interest analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. Ct. App. Tenn. 2015). Once a court makes the underlying factual findings, it should "consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest." *Id.*

"The best interest analysis is a fact-intensive inquiry, and each case is unique." *In re Kenneth D.*, No. M2021-00214-COA-R3-PT, 2022 WL 556739, at *7 (Tenn. Ct. App. Feb. 24, 2022) (citing *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004)). A trial court must consider the factors enumerated in Tenn. Code Ann. § 36-1-113(i), but it is not required to find that each of the enumerated factors exists before concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Although in some circumstances "the consideration of one factor may very well dictate the outcome of the analysis," *In re Audrey S.*, 182 S.W.3d at 878, a court is still obligated to consider "all the factors and all the proof." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017). The Tennessee General Assembly amended the statutory best-interest factors in 2021. *See* 2021 TENN. PUB. ACTS ch. 190 § 1 (S.B. 205), eff. April 22, 2021. Because Petitioners filed the termination petition after April 22, 2021, the new best interest factors apply in this case. *See In re Braxton M.*, 531

S.W.3d 708, 732 (Tenn. Ct. App. 2017) (holding the version of a termination statute "'that was in force when the petition was filed governs this case'") (quoting *In re Tianna B.*, No. E2015-02189-COA-R3-PT, 2016 WL 3729386, at *7 (Tenn. Ct. App. July 6, 2016)).

Our ability to review the juvenile court's best interest determination is hindered by a lack of factual findings. The termination order includes no analysis from the juvenile court regarding its best interest determination. Rather, the order contains only the following conclusory statement: "[t]hat it is in the best interests of the minor children for [Mother's] parental rights to be terminated." This statement does not even come close to satisfying the "specific findings of fact and conclusions of law" requirement in Tenn. Code Ann. § 36-1-113(k). The transcript from the November 30 hearing shows that the juvenile court made an oral ruling terminating Mother's parental rights at the close of Petitioners' proof. In its oral ruling, the court made some factual findings regarding its best interest analysis, but the termination order does not include any of those factual findings, nor does it incorporate them by reference. "It is well-settled that the trial court speaks through its orders, not through its statements contained in the transcripts." *In re Christian G.*, No. W2013-02269-COA-R3-JV, 2014 WL 3896003, at *1 (Tenn. Ct. App. Aug. 11, 2014) (citing *Alexander v. J.B. Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011)); *see also* Tenn. Code Ann. § 36-1-113(k) (requiring a court terminating a parent's parental rights to "*enter an order* that makes specific findings of fact and conclusions of law") (emphasis added). Furthermore, from the court's oral ruling, it appears that the court applied the old best interest factors rather than the new ones that were in effect when the petition was filed.

Because the juvenile court failed to make sufficient findings of fact and conclusions of law regarding the best interest analysis, we vacate the court's judgment terminating Mother's parental rights. The case is remanded for the court to make specific findings of fact and conclusions of law for the best interest factors and, in making those findings of fact and conclusions of law, the court should apply the new best interest factors in Tenn. Code Ann. § 36-1-113(i).

CONCLUSION

We affirm the juvenile court's determination that clear and convincing evidence existed to establish the ground of abandonment by failure to support, but we reverse the court's determination that Petitioners proved by clear and convincing evidence the grounds of persistence of conditions and failure to demonstrate an ability and willingness to assume custody or financial responsibility of the child. Because the juvenile court failed to make sufficient findings of fact in concluding that termination of Mother's parental rights was in the best interest of the children, we vacate the court's judgment terminating Mother's parental rights and remand for specific findings of fact and conclusions of law as to the new best interest factors. Costs of this appeal are assessed equally against the appellant,

Cheryl M., and the appellees, Gregory F. and Shirley F.,  for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE